STATE OF NORTH CAROLINA v HURTIS KLINEY LUDLUM

No. 75

(Filed 17 August 1981)

**1. Rape § 8— elements of first-degree sexual offense with child**

　　To convict a defendant of a first-degree sexual offense with a child of twelve years or less, the State need only prove (1) the defendant engaged in a "sexual act," (2) the victim was at the time of the act twelve years old or less, and (3) the defendant was at that time four or more years older than the victim. G.S. 14-27.4.

**2. Rape §§ 8, 11— first-degree sexual offense with child—meaning of cunnilingus—sufficiency of evidence**

　　Penetration is not a necessary element of cunnilingus as the term is used in G.S. 14-27.1(4); rather, cunnilingus means stimulation by the tongue or lips of any part of a female's genitalia, and the required stimulation is accomplished when there has been the slightest toughing by the lips or tongue of another to any part of the female's genitalia. Therefore, testimony by a four-year-old girl that defendant "touched me . . .with his tongue . . . between my legs" while indicating the place of touching to the jury constituted sufficient evidence of cunnilingus to support a conviction for a first-degree sexual offense.

BEFORE *Judge Braswell* at the 6 October 1980 Session of BRUNSWICK Superior Court defendant was convicted of a first-

degree sexual offense. He was sentenced to imprisonment for life. Defendant appeals of right to this Court pursuant to G.S. 7A-27.

*Rufus L. Edmisten, Attorney General, by Guy A. Hamlin, Assistant Attorney General, for the State.*

*James R. Prevatte and Richard S. Owens, III, Attorneys for defendant appellant.*

EXUM, Justice.

The principal question presented by this appeal is whether testimony by a four-year-old girl that defendant "touched me . . . with his tongue . . . between my legs" while indicating the place of touching to the jury constitutes sufficient evidence of "cunnilingus" to support a conviction for a first-degree sexual offense. We hold that it does.

[1]    To convict a defendant of a first-degree sexual offense with a child of twelve years or less, the State need only prove (1) the defendant engaged in a "sexual act," (2) the victim was at the time of the act twelve years old or less, and (3) the defendant was at that time four or more years older than the victim. G.S. 14-27.4. A "sexual act" is defined as "cunnilingus, fellatio, analingus, or anal intercourse . . . [or] the penetration, however slight, by any object into the genital or anal opening of another's body . . . [except for] accepted medical purposes." G.S. 14-27.1(4). The "sexual act" relied on in this case is cunnilingus.

The State's evidence tends to show the following: On 20 May 1980 at about 5:00 p.m., Heather Rice, age four, was in the yard of her house at Holden Beach in Brunswick County. She was wearing a bathing suit with panties underneath. She saw a man across the street. The man said hello to her, crossed the street, and beckoned to her to follow him into the woods. Heather followed the man into the woods and when she got there, the man pulled down her bathing suit and panties. About what happened after this, Heather testified as follows:

"Q. After he pulled down your pants did he touch you in any way?

A. Yes.

Q. How did he touch you, Heather?

A. With his tongue.

When he touched me with his tongue I was lying down.

Q. Now where did he touch you with his tongue?

A. (Indicating).

Q. Would you stand up and point so that the jury can see where you are pointing to.

A. (Indicating).

Q. Did he touch you between your legs or on your leg?

A. Between my legs.

Q. And how long did he touch you between your legs with his tongue?

A. A minute."

She said the man told her not to tell anyone about what had happened, but Heather ran home and told her mother, who called the police.

Heather pointed out defendant as the man who had "bothered" her. She also testified that she had picked his photograph out of an array on 21 May 1980, the day after the assault. She recalled picking defendant out of a lineup as well.

Heather's mother and Frances Goins of the Brunswick County Sheriff's Department testified in corroboration of Heather's story by recounting Heather's similar accounts shortly after the assault. After the judge instructed the jury on the limits of corroborative testimony, he permitted Mrs. Goins to read the following from a statement which Heather made on 21 May 1980:

"I was out in the yard watching my horse. I saw this man at the edge of the woods. I saw him at the white garage across the street before him in the woods. The man said, 'Hi,' and I said 'Hi.' He said, 'Come here. Come here.' I didn't want to but I went over to him. He backed in the woods and motioned with his finger for me to go too so I went. He took me by the hand and made me run. He stopped in the woods. He pulled my swimsuit and panties off. He put his tongue in my thing where I use the bathroom . . . ."

Defendant took the stand in his own defense and presented an alibi for his whereabouts at the time of the assault. He said he was with others the entire day. Defendant's wife, mother-in-law, and brother-in-law testified in corroboration of this account. Another witness, Billy Eason, testified that he was with defendant from 4:30 to 7:00 p.m. on 20 May 1980.

On rebuttal, the State offered evidence tending to show the following: Nancy Morton testified that at about 5:00 p.m. on 20 May 1980 she saw defendant fleeing from her trailer. Keith Kennedy of the Brunswick County Sheriff's Department testified that defendant had confessed to breaking into the trailer and that defendant had said he had been near the Rices' home earlier in the day.

[2] Defendant's principal contention on appeal is: The evidence fails to prove any penetration of Heather's genitalia, or external genital organs; penetration is required in order for cunnilingus, as the term is used in G.S. 14-27.1(4), to occur; therefore he was entitled to a dismissal at the close of the evidence.

We agree with defendant that the evidence is insufficient to prove any penetration of Heather's genitalia. Heather testified that defendant only "touched" her with his tongue between her legs. While Heather's statement to Mrs. Goins does indicate that defendant had actually penetrated her genitalia, the statement was admitted only for corroboration and cannot be considered as substantive evidence of the facts stated. *State v. Parish*, 79 N.C. 610 (1878); 1 Stansbury's North Carolina Evidence § 52 (Brandis rev. 1973).

We do not agree, however, that penetration is required before cunnilingus, as that word is used in the statute, can occur. Defendant's argument to the contrary rests entirely on cases arising under G.S. 14-177 which proscribes and makes punishable "the crime against nature." The cases are *State v. Joyner*, 295 N.C. 55, 243 S.E. 2d 367 (1978); *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961), and *State v. Fenner*, 166 N.C. 247, 80 S.E. 970 (1914).

In *Fenner*, the act in question was fellatio. The evidence tended to show only "an attempt [by a male defendant to insert] his private parts in the mouth of [another] male." This Court concluded that because "there was no evidence of penetration, which

is an essential . . . element of the offense" defendant could not be convicted of the crime charged. Because, however, there was evidence of an *attempt* to commit "the crime against nature," the Court remanded the matter for a new trial on the attempt.

In *Whittemore* defendant, a male over eighteen, was charged with committing "the crime against nature" against a thirteen-year-old girl. The evidence tended to show that defendant placed his hand and then put his mouth on the victim's "privates" and "kept his mouth there about one or two minutes. He just left it there." Because this evidence failed to show any penetration of the female genitalia, the Court concluded that "the crime against nature" charged should have been dismissed.

*Whittemore* was followed in *Joyner*, where defendant, a male, was indicted for, among other things, "the crime against nature." The evidence tending to support this charge showed that defendant had put his mouth on the victim's "vagina and inserted his tongue into her vagina." Against defendant's contention that to be convicted of "the crime against nature" there must be some penetration by the male sexual organ, this Court said, "though penetration by or of a sexual organ is an essential element of the crime [citing *Whittemore*], the crime against nature is not limited to penetration by the *male* sexual organ . . . . In present case the State's evidence showed that the defendant penetrated the victim's female sexual organ with his tongue. This is sufficient to overrule defendant's motion for nonsuit."

In none of these cases, however, did the Court define the acts of either fellatio or cunnilingus as such. The Court was concerned, rather, with the elements of "the crime against nature," which, it concluded, might be committed by way of these acts. The Court said in *Whittemore*, 255 N.C. at 585, 122 S.E. 2d at 398:

"Conduct declared criminal by G.S. 14-177 is sexual intercourse contrary to the order of nature. Proof of penetration of or by the sexual organ is essential to conviction. This interpretation was put on the statute in *State v. Fenner*, 166 N.C. 247, 80 S.E. 970, decided in 1914. The Legislature has not disapproved of the interpretation then given by amending the statute. That interpretation accords with the interpretation generally given to similar statutes. The Supreme Court of Maine said: '(I)t does not follow that every act of

sexual perversion is encompassed within the definition of "the crime against nature" . . . The crime against nature involving mankind is not complete without some penetration, however slight, of a natural orifice of the body. The penetration need not be to any particular distance.' *S. v. Pratt,* 116 A. 2d 924; *S. v. Hill,* 176 So. 719 (Miss.); *People v. Angier,* 112 P. 2d 659 (Cal.); *Hopper v. S.,* 302 P. 2d 162 (Okla.); *S. v. Withrow,* 96 S.E. 2d 913 (W. Va.); *Wharton v. S.,* 198 S.E. 823 (Ga.); 81 C.J.S. 371; 48 Am. Jur. 550."

We conclude, therefore, that these cases decide, insofar as the penetration question is concerned, only that penetration is a necessary element of "the crime against nature." They do not decide that penetration is a necessary element of the acts of fellatio or cunnilingus. These cases, therefore, do not control our decision here.

Whether penetration is required before cunnilingus, as the word is used in the statute, may occur is a question really of legislative intent. What did the Legislature mean by its use of the term?

In arriving at this intent, we look first to the ordinary meaning of the word. Unless statutory words have acquired some technical meaning they are construed in accordance with their ordinary meaning unless some different meaning is definitely indicated by the context. *State v. Lee,* 277 N.C. 242, 176 S.E. 2d 772 (1970). Courts may and often do consult dictionaries for such meanings. *Id.; State v. Martin,* 7 N.C. App. 532, 173 S.E. 2d 47 (1970).

Cunnilingus is defined by *Webster's Third New International Dictionary* (Unabridged) (hereinafter Webster's) as "stimulation of the vulva or clitoris with the lips or tongue." The word is defined by the *Oxford English Dictionary* to mean, "[o]ral stimulation of the vulva or clitoris." (Supplement, Vol. I, 1972). According to *Gray's Anatomy,* (28th Edition, 1966) at pp. 1328-1329, the external genital organs of the female consist, in pertinent part, of the *mons pubis, labia majora, labia minora,* and the clitoris. The outermost of these are the *labia majora.* Next come the *labia minora.* The innermost of these anatomical structures is the clitoris. *Gray's Anatomy* also teaches that the term "vulva, as generally applied, includes all these parts" (in addition to the

vestibule of the vagina, the bulb of the vestibule, and the greater vestibule glands). According to Webster's, the term "vulva" means: "1 a: the external parts of the female genital organs, b: the opening between the projecting parts of the external organs."

If the term "vulva" means *all* of the external female genitals, as the cited authorities say, and the clitoris lies beneath both the outer and inner *labia*, then in order for the vulva *in its entirety* or the clitoris to be stimulated, there must be some penetration of at least the outer labia. On the other hand, one may reasonably argue that stimulation of the vulva means stimulation of any part of the vulva, for example, the *labia majora*, or the *mons pubis*.

We are satisfied the Legislature did not intend that the vulva in its entirety or the clitoris specifically must be stimulated in order for cunnilingus to occur. To adopt this view would saddle the criminal law with hypertechnical distinctions and the prosecution with overly complex and in some cases impossible burdens of proof. We think, rather, that given the possible interpretations of the word as ordinarily used, the Legislature intended to adopt that usage which would avoid these difficulties. We conclude, therefore, that the Legislature intended by its use of the word cunnilingus to mean stimulation by the tongue or lips of any part of a woman's genitalia.

Our view of the legislative intent is borne out by the context in which the word is used in G.S. 14-27.1(4) and the overall statutory scheme. Article 7A, Chapter 14, by which this kind of act is made punishable. The statute, G.S. 14-27.1(4) defines "sexual act" as "cunnilingus, fellatio, analingus, or anal intercourse . . . [or] the penetration, however slight, by any object into the genital or anal opening of another person's body [except for] accepted medical purposes." If the Legislature intended cunnilingus to require penetration by the lips or tongue, then its inclusion in the statute as a form of sexual act would have been superfluous because, the lips or tongue being themselves objects, the act would have been prohibited under the clause dealing specifically with penetrations.

Furthermore unlike prosecutions under "the crime against nature" statute, G.S. 14-177, in which the act itself, if it is deemed to be such a crime, is punishable, none of the "sexual acts"

State v. Ludlum

described by G.S. 14-27.1(4) are punishable *per se* under Article 7A. They are punishable only if committed under the circumstances set out in G.S. 14-27.4 or G.S. 14-27.5. In order for a "sexual act" such as cunnilingus to be punished under this article as a first-degree sexual offense, it must either be committed "by force and against the will" of the victim and the perpetrator must:

"a. [Employ] or [display] a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or

b. [Inflict] serious personal injury upon the victim or another person; or

c. . . . [commit] the offense aided and abetted by one or more other persons[;]"

or it must be committed, as in the instant case, upon a victim who is twelve years old or less, the perpetrator being "four or more years older than the victim." G.S. 14-27.4. In order for a sexual act such as cunnilingus to be punishable as a second-degree sexual offense, it must be committed "[b]y force and against the will" of the victim or against a victim

"[w]ho is mentally defective, mentally incapacitated, or physically helpless, and the person performing the acts knows or should reasonably know that the other person is mentally defective, mentally incapacitated, or physically helpless." G.S. 14-27.5.

Thus in Article 7A prosecutions, although the form of the sexual act is limited to those listed in G.S. 14-27.1(4), the gravamen of the sexual offense itself is that it is committed by force and against the will of the victim or upon a victim who because of age or other incapacity is incapable of consenting. The purpose of Article 7A is to increase the punishment for various kinds of *forcible* sexual acts, which were not punishable as rapes, beyond that which was available under "the crime against nature" statute, G.S. 14-177, or the statute which prohibits "taking indecent liberties with children." G.S. 14-202.1. Once the victim of one of these acts has been forced against his or her will to submit, the degradation to his or her person, the real evil against which the statutes speak, has been accomplished. The degradation

to the person of a woman forced to submit or a small girl incapable of consenting is complete in the case of cunnilingus once the perpetrator's lips or tongue have touched any part of her genitalia whether or not any actual "penetration" of the genitalia takes place.

We do not choose to quibble either over the word "stimulation" contained in the definitions of cunnilingus upon which we have relied. Whatever "stimulation" is required is accomplished for purposes of Article 7A prosecutions when there has been the slightest touching by the lips or tongue of another to any part of the woman's genitalia.

We think Heather's testimony, when all reasonable inferences favorable to the State are drawn therefrom, is sufficient to permit a jury to find beyond a reasonable doubt that defendant touched a part of her genitalia with his tongue. Therefore, the trial judge did not err in denying defendant's motion to dismiss for insufficiency of the evidence.

Defendant next assigns as error the admission of Frances Goins' testimony. He argues that it should not have been admitted to corroborate Heather's testimony because it goes far beyond Heather's testimony in tending to show penetration, which defendant has maintained is an essential element of the offense. He relies on *State v. Fowler*, 270 N.C. 468, 155 S.E. 2d 83 (1967). Since we have determined that penetration is not an essential element of the offense charged, we believe the testimony was properly admitted for corroborative purposes.

In defendant's third assignment of error he contends that the jury should have been instructed on the crime of taking indecent liberties with a child. G.S. 14-202.1. Defendant was properly charged in the bill of indictment only with a first-degree sexual offense. General Statute 15-170 permits the judge to instruct on only two types of crimes not charged in the bill of indictment — attempts to commit the indicted offense and lesser-included offenses of the indicted offense. The trial judge instructed here on an attempt. His decision not to charge on the crime of taking indecent liberties was proper since this crime is neither an attempt to commit the indicted offense nor is it a lesser-included offense of a first-degree sexual offense. *State v. Williams*, 303 N.C. 507, 279 S.E. 2d 592 (No. 132, Spring Term 1981, filed 8 July 1981).

Finally, we conclude, contrary to defendant's last contention, that the trial judge did not abuse his discretion in failing to set aside the verdict as being against the greater weight of the evidence.

In defendant's trial, we find

No error.